Megan Ann Dailey (SB#221574)
Law Office of Megan Dailey
805 Maine Avenue
Richmond, CA 94805
(415) 794-4479
Saveyourhouse70@gmail.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

|  |  |
|---|---|
| JOHN FINK AND SUSAN FINK,<br><br>     Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.; CAL-WESTERN RECONVEYANCE, LLC; DOES 1 to 100, inclusive,<br><br>     Defendants. | Case No.: 4:15-cv-00001-YGR<br><br>PLAINTIFFS' OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT<br><br>Hearing: March 17, 2015<br>Time: 2:00 p.m.<br>Room: 1, 4TH Floor<br>Judge: Hon. Judge Yvonne Gonzalez Rogers |

## **Table of Contents**

Table of Authorities ................................................................................................. iii

    Cases………………………………………………………...… iii

    Statutes ................................................................................................... iv

    Other Authorities ...................................................................................v

Memorandum of Points and Authorities ...................................................1

Introduction ....................................................................................................1

Factual Background .......................................................................................1

Law and Argument ……………………………………………………..2

    I.     Legal Standard……………………………………………..2

    II.    Plaintiffs Have not Filed a Claim Based on Faulty Securitization ………………4

    III.    Plaintiff Stated Sufficient Facts for Breach of Contract and Implied Agreement...7

    IV.    The Homeowner's Bill of Rights Act Contains Basically the Same Provision as the Preceding Cal. Civ. Code § 2923.5 and Plaintiffs Stated a Violation of Dual-Tracking …...10

    V.    Plaintiffs Stated a Claim for Violation of the FDCPA …………….…………...12

    VI.    Plaintiff Properly Alleged Claims of Slander of Title and Wrongful Foreclosure ………………………………………………………………...12

    VII.    Plaintiffs Have Standing Under Federal Law And Have Stated Sufficient Facts Under TILA…………………………………………………………..15

    VIII.    Plaintiffs Stated a Cause of Action for Violations of California Business and Professions Code Section 17200 …………………………………………...16

    IX.    Conclusion………………………………………………...17

**Table of Authorities**

Cases

*ABF Capital Corp. v. Berglass,* 130 Cal.App. 4th 825, 838 (2d dist 2005)…………,………4, 16

*Addison v. State of California,* (1978) 21 Cal.3d 313, 319 ……………………………….……14

*Arnolds Mgmt. Corp. v. Eischen,* 158 Cal.App.3d 575, 579 (1984) …………………….…….3

*Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) ……………………………………………….3

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 557 (2007) …………………………………….3

*Botsford v. Haskins & Sells* (1978, Cal App 1st Dist) 81 Cal App 3d 780, 146 Cal Rptr 752, 1978

   Cal App LEXIS 1623 ……………………………………………………………………..15

*Brown v. Spohr,* 180 N.Y. 201, 209-210 (N.Y. 1904) …………………………………….....16

*Bryant v. Mortgage Capital Resource Corp.* 197 F.Supp.2d 1357 (N.D.Ga. 2002) ……………10

*Crocker-Citizens Nat'l Bank v. Younger* (1971) 4 Cal 3d 202 ……………………………….…16

*Dimock v. Emerald Properties, Inc.* (2000) 81 Cal. App. 4th 868………………………………….2

*Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703 (11th Cir., 1999) ……………………20

*Estate of Gross* (1963, Cal App 1st Dist) 216 Cal App 2d 563………………………….……..16

*Fontenot v. Wells Fargo Bank, N.A.,*198 Cal. App. 4th 256, 270 (2011) ……………………5, 15

*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 ………..…....5, 15, 18

*Hamilton v. Greenwich Investors XXVI, LLC,* (2011) 195 Cal.App.4th 1602, 1607 …………...14

*Herrera v. Federal Nat. Mortg. Assn.,* 205 Cal.App.4th 1495, 1505 (2012) ……………………18

*Jenkins v. JP Morgan Chase Bank, N.A.,* (2013) 216 Cal.App.4th 497………..……………….16

*Kachlon v. Markowitz* (2008) 168 Cal. App. 4th 316, 336 …………………………………...19

*Karlsen v. American Savings & Loan Assn.* (1971) 15 Cal.App.3d 117, 121 …………………….3

*Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89, 113 ……………………….…………….3

*McLean v. GMAC Mortg. Corp.* 595 F.Supp.2d 1360 (S.D. Fla. 2009) ………………..………11

*MERS v. Robinson,* USDC CDCA Case No. 2:13-cv-07142-PSG-AS, Doc. 17, pp. 6-7………..1

*Naranjo v. SBMC Mortgage* (S.D. Cal., July 24, 2012, No. 11-cv-229-L(WVG)) 2012 WL

   3030370 108 (1971) …………………………………./…………………………………..5

*Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176 (1971) ……………..…….13

*Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235 (11th Cir. 1999) …………………………..13

*Roemer v. Retail Credit Co.*, 44 Cal.App.3d 926, 936 (1975) ……………………………..…19

*Sacchi v. Mortgage Electronic Registration Systems, Inc.*, No. CV 11-1658 ARM:, 2011 WL 2533029, at *5 (C.D. Cal. June 24, 2011) …………………………………………………..15, 18

*Schafer v. CitiMortgage, Inc.*, No. CV 11-03919 ODW, 2011 WL 2437267, *4 (C.D. Cal. June 15, 2011) …………………………………………………………………………..15

*Singh v. Bank of America, N.A.* No. 2:13-cv-00729-MCE-AC(E.D. Cal. Apr. 24, 2013) ……...10

*Stockton v. Newman* (1957) 148 Cal. App. 2d 558, 564 …………………………………….6

*Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999 …………………………………………………………………………………………….12

*Tamburri v. Suntrust Mortgage, Inc.*, (N.D. Cal. 2011) WL 6294472 *4  …………………2, 18

*Vogan v. Wells Fargo Bank, N.A. et al*, 2011 WL 5826016, *7 ……………………………15


Statutes

Cal. Bus. and Prof. Code § 17200 …………………………………………………..2, 22

California Civil Code § 47(c)(1) …………………………………………………………...19

Cal. Civ. Code § 1788 …………………………………………………………………….2

Cal Civ. Code § 2923.5 …………………………………………………………...…..3, 10, 14

Cal. Civ. Code § 2923.5(g)(2) ………………………………………………………………10

Cal. Civ. Code § 2923.55 …………………………………………………………………14

Cal. Civ. Code § 2924 …………………………………………………………….14, 16, 22

Cal. Civ. Code §§ 2924.12 et seq. (2013) ……………………………………………………10

F.R.C.P. Rule 12(b)(6) …………………………………………………………………….2

12 C.F.R. Ch. X, Part 1024.33(b) ………………………………………………………...…9

12 C.F.R. Ch. X, Part 1024.33(b)(4)(iii) …………………………………………………….10

12 U.S.C. § 2605  ……………………………………………………..…………….3, 6, 8, 9, 12

15 U.S.C. § 1601 …………………………………………………………………………2, 20

15 U.S.C § 1641(g) …………………………………………………………………………..21

15 U.S.C. § 1692 …………………………………………………………………………….2

24 C.F.R. § 3500.21(d)(2) ……………………………………………………………………9

24 C.F.R. § 3500.21(e) ……………………………………………………………………...11

26 U.S.C. 7801(1982) ……………………………………………………………………….21

   Other Authorities

Constitution, Art. 1, § 10 ....................................................................................... 4, 16

**Memorandum of Points and Authorities**

**Introduction**

Plaintiffs JOHN FINK AND SUSAN FINK ("Plaintiffs") herein submit their PLAINTIFFS' OPPOSITION TO WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT on the grounds that Plaintiffs' Complaint fails to allege facts sufficient to state valid causes of action.

**Factual Background**

On September 23, 2005, Plaintiffs recorded a Deed of Trust in the Contra Costa County Recorder's Office against the real property located at 5009 Murchio Drive Concord, CA 94521 ("Subject Property") to secure a Note disclosed as an adjustable rate mortgage in the amount of $463,750 in favor of World Savings Bank, FSB, as original "Lender."

On April 2, 2014, a Notice of Default and Election to Sell Under Deed of Trust ("NOD") was recorded in the Contra Costa County Recorder's Office by CWR.

On July 7, 2014, a Notice of Trustee's Sale ("NOTS") was recorded in the Contra Costa County Recorder's Office by CWR. A trustee's sale is scheduled to proceed March 15, 2015 subject to a temporary restraining order issued by the Court to date postponing the sale until after the order to show cause hearing set for March 17, 2015 and issuance of an order thereon. A true and correct copy of the NOTS is attached to the Complaint as Exhibit A.

Plaintiffs alleged upon information and belief, the pending trustee's sale is being initiated by parties with no lawful interest in Plaintiffs' DOT due to a break in the chain of title at the time of Wachovia's attempted assumption of rights pertaining to Plaintiffs' DOT and Note and lack of notices relating thereto, Wells Fargo Bank, N.A.'s ("Wells Fargo") attempted subsequent assumption of rights, and resulting wrongful foreclosure in violation of the Cal. Civil Code based upon the aforementioned reasons and due to the false NOD which failed to state an amount due in compliance with Plaintiffs' Note, and further violations of Cal. Civ. Code, 15 U.S.C. § 1692,

15 U.S.C. § 1601, 12 U.S.C. § 2605 and Cal. Bus. and Prof. Code § 17200, as will be set forth below.

Plaintiffs are not required to tender the amount due to challenge this void foreclosure sale. *Tamburri v. Suntrust Mortgage, Inc.*, (N.D. Cal. 2011) WL 6294472 *4 ("where a sale is void, rather than simply voidable, tender is not required").  As the Court found in *Dimock v. Emerald Properties, Inc*. (2000) 81 Cal. App. 4th 868, a Trustee's Deed issued by an entity who was not the correct Trustee is void.  81 Cal. App. 4th at 876; *see also Lona v. Citibank, N.A.* (2011) 202 Cal. App. 4th 89, 113.

Additionally, "the tender requirement [only] applies to any claim "implicitly integrated" with the foreclosure sale. *See Arnolds Mgmt. Corp. v. Eischen*, 158 Cal.App.3d 575, 579 (1984); *Karlsen v. American Savings & Loan Assn*. (1971) 15 Cal.App.3d 117, 121 (breach of oral contract, constructive trust, and accounting were implicitly integrated with the foreclosure sale and failed absent tender)."

## I.    Legal Standard

A Rule 12(b)(6) Motion to Dismiss tests only whether the Plaintiff's Complaint states sufficient facts to state a plausible claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).  A complaint which contains sufficient factual allegations "to raise a right to relief above the speculative level" will survive a motion to dismiss.  *Id*.  A complaint must state a claim that is facially plausible, requiring facts showing more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  In evaluating whether a complaint meets this standard, the court is not required to take the plaintiff's legal conclusions as true, but must take the plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief."  *Id*. at 1950.

## II.      Plaintiffs Have not Filed a Claim Based on Faulty Securitization

Although Wells Fargo filed their motion to dismiss to almost each cause of action on grounds that Plaintiffs' faulty securitization theory is factually untrue and legally defective, Plaintiffs have not filed such a claim.  The Plaintiffs in this matter are still investigating the facts underlying this case.  In the event faulty securitization claims are discovered, Plaintiffs will seek leave to amend to state such a claim.  Instead Plaintiffs alleged the transfers from original Lender World Savings Bank, FSB ("World Savings") to Wachovia Mortgage, FSB ("Wachovia") to Wells Fargo breached the terms of the deed of trust requiring notice of transfer of servicing rights and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 leading to a break in the chain of title and wrongful foreclosure.  Plaintiffs alleged the following:

> "Defendants also attempted to transfer servicing rights.  Plaintiffs' DOT provides that a sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  And Plaintiffs' DOT requires that any change of servicer is to be performed specifically in accordance also with the provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, "RESPA".  *Id.*  Plaintiffs allege that pursuant to this clause Plaintiffs' DOT conditions the terms of servicing and requires that these servicing activities take place in accordance with "Applicable Law" because the terms of the DOT address the occurrence of the event of a third party to the DOT collecting payments under the Note and requires that the initiation of servicing activities take place in accordance with RESPA, the Note, DOT, and Applicable Law.  In this case, the attempted transfer(s) to Wachovia and Wells Fargo also attempts to transfer servicing obligations and rights.  However, Defendants never served any notice of transfer of servicing rights or otherwise, in favor of Wells Fargo on Plaintiffs." See Compl., pp. 4-5, ¶ 15.

And Plaintiffs also alleged a break in the chain of title, but due to insufficiency of the Purchase and Assumption Agreements to transfer any interest in Plaintiffs' Note and Deed of Trust under the theories espoused in *Javaheri v. JPMorgan Chase Bank*, Case No. CV10-08185 ODW.  Plaintiffs are informed and believe and alleged that circumstances relating to the transfers from World Savings to Wachovia to Wells Fargo included acquisitions of certain of the

1  assets of the defunct banks World Savings and Wachovia, and *not* securitization of this particular

2  Note and Deed of Trust pursuant to a <u>Pooling and Servicing Agreement</u>.

3       At least one federal court of jurisdiction has found the argument that these types of

4  Purchase and Assumption Agreement fail to transfer the right to foreclose, to be persuasive.   In

5  an 11-page Order dated June 2, 2011, the United States District Court for the Central District of

6  California has denied JPMorgan Chase Bank's Motions to dismiss a borrower's claims for

7  violations of CA Civ. Code 2923.5, Wrongful Foreclosure, Quiet Title, Quasi Contract,

8  Declaratory Relief, and Injunctive Relief in the matter of *Javaheri*, Case No. CV10-08185

9  ODW, *supra*. The decision cites case law from the United States Supreme Court, the United

10  States Court of Appeals for the 9th Circuit, and California state courts.

11       The borrower in the *Javaheri* case filed a Second Amended Complaint for numerous

12  causes of action including those identified above. The loan had been originated by Washington

13  Mutual Bank (WaMu), with the loan thereafter being securitized.   JP Morgan Chase Bank

14  ("JPM") relied upon the Purchase and Assumption Agreement between JPM and the Federal

15  Deposit Insurance Corp. ("FDIC") as Receiver for WaMu, contending that it had succeeded to all

16  of WaMu's assets, including the borrower's note.

17       The borrower in *Javaheri* claimed that between November 13 and 30, 2007, WaMu

18  transferred his Note to Washington Mutual Mortgage Securities Corporation and that the Note

19  was sold to an investment trust and became part of a loan pool, PSA, CDO, mortgage-backed

20  security or pass-through certificate, credit default swap, investment trust, and/or a special

21  purpose vehicle. The loan was identified with a CUSIP number and the pool number. The court

22  found that "Coupled with Plaintiff's allegation that JPMorgan never properly recorded its claim

23  of ownership in the subject property, the above mentioned facts regarding the transfer of

24  Plaintiff's Note prior to JPMorgan's acquisition of WaMu's assets raise Plaintiff's right to relief

25  above a speculative level", warranting denial of JPM's Motions to Dismiss as to the claims set

26  forth above.

One of the more interesting theories raised by *Javaheri* was the "Quasi Contract" claim, where the borrower alleged that JPM was unjustly enriched by any payments made by the borrower to JPM which were not paid to the lender or beneficiary. The Court concluded, for purposes of pleading, that "if indeed JPMorgan did not own the Note yet received payments therefrom, those payments may have been received unjustly". We believe that if in fact JPM fraudulently represented to the borrower that it did own or have rights to collect monies under the Note when in fact it did not, this would support a fraud-based claim as well.

The Court specifically found that "in the face of these specific factual allegations (by the borrower as to the securitization of the loan) JPMorgan's assertion that the [Purchase and Assumption] Agreement suffices to establish their ownership of the Note is no longer viable. Indeed, the [Purchase and Assumption] Agreement does not specifically identify Plaintiff's Note."

In the instant matter, Plaintiffs were prejudiced by Defendants' assertion of the right to foreclose and maintaining the false Deed of Trust recorded against Plaintiffs' property because the false Deed of Trust is the foundation for Defendants' attempts to complete a wrongful foreclosure of Plaintiffs' property and the foreclosure documents could simply be re-recorded should Plaintiffs' lawsuit be dismissed.  Without the improper and false Deed of Trust, these Defendants' would not have initiated this foreclosure.  As the Court stated in *Tamburri*, 2011 WL 6294472 at *14, the fact that the wrong party initiated a foreclosure demonstrates prejudice to the Plaintiff:

California law requires strict compliance with non-judicial foreclosure statutes.  *Ung v. Koehler*, 135 Cal.App.4th 186, at 202–03, 37 Cal.Rptr.3d 311 (2005) ("The statutory requirements must be strictly complied with, and a trustee's sale based on statutorily deficient notice of default is invalid."). California courts have acknowledged that notices of default serve a vital purpose as the "crucial first step in the foreclosure process."  *Mabry v. Superior Court*, 185 Cal.App.4th 208, 221, 110 Cal.Rptr.3d 201 (2010).  Thus, assuming prejudice is required, the threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to

the homeowner because there is no power of sale without a valid notice of default. *Castillo v. Skoba*, 2010 WL 3986953 at*2.

The recording of the aforementioned documents made it necessary for Plaintiffs to retain attorneys and to bring this action to cancel the instruments casting doubt on Plaintiffs' title, and transferring Plaintiffs' title. Therefore, Plaintiffs are entitled to recover attorneys' fees and costs incurred in cancelling the instrument.

It is also the case that there are no assignments recorded relative in time to the respective Purchase and Assumption Agreements but Plaintiffs did not allege this was a result of faulty securitization – to Plaintiffs' knowledge at this time, but instead a series of unrecorded transfers similar to the facts of the *Javaheri* matter, albeit not pertaining to transfers pursuant to securitization, nevertheless causing a break in the chain of title, incident to Purchase and Assumption Agreement(s), and *with the occurrence of no recordation of any assignment of the Deed of Trust.* Plaintiffs believe these transfers were related to bank failure(s) of World Savings and Wachovia and not necessarily related to securitization, but broke the chain of title and violated RESPA and terms of the Deed of Trust.

The instant matter can be distinguished from the facts in *Fontenot v. Wells Fargo Bank, N.A.,*198 Cal. App. 4th 256, 270 (2011) in which it was held there was no prejudice to Plaintiffs because the assignee U.S. Bank, merely stepped into the shoes via an assignment by Wells Fargo of a perfectly legal negotiable instrument and then attempted a foreclosure in a non-judicial sale free from collusion or violation of procedural requirements. The case here for the Plaintiffs is such that Plaintiffs are not claiming the role of the assignor *as nominee* is central to the action and so Plaintiffs must demonstrate collusion or procedural violations in order to demonstrate prejudice by Mortgage Electronic Registration Systems, Inc. ("MERS")'s role as nominee in recording the assignment, but instead, Plaintiffs claims are alleged on grounds that the transfers violated the deed of trust requiring notice of change in servicer and also violated RESPA, causing a break in the chain of title and servicing rights where as seems to be the case here, the Lender and Servicer appear to be the same entity. *See Gomes v. Countrywide Home Loans, Inc.*

(2011) 192 Cal.App.4th 1149, *Naranjo v. SBMC Mortgage* (S.D. Cal., July 24, 2012, No. 11-cv-229-L(WVG)) 2012 WL 3030370 108 (1971)).   And there was never any recordation of an assignment of Deed of Trust.   Plaintiffs also alleged that failure to record any assignments violated the Truth-in –Lending Act, 15 U.S.C § 1641(g).

And Plaintiff suffered prejudice as a result of the transfers from being precluded from negotiating for a modification with the actual beneficiary or authorized representative during the time period commencing with the attempted sale to Wachovia on or around 2006 and extending to the present time and at all due to the break in the chain of title, and because notice of assignment(s) and notice of change in servicer were not provided as required as required by the terms of the deed of trust and federal statute.   And real property is considered unique in California and monetary damages are deemed inadequate to compensate Plaintiff for such loss. *Stockton v. Newman* (1957) 148 Cal. App. 2d 558, 564.   Thus, Wells Fargo's motion to dismiss on grounds that Plaintiff's faulty securitization allegations are factually untrue and legally defective, as to causes of action for Breach of Contract, Breach of Implied Agreement, Wrongful Foreclosure, Slander of Title, Violation of Bus. And Prof. Code § 17200, and Violation of RESPA, should be overruled, because Plaintiffs never stated those allegations.

### III.   Plaintiff Stated Sufficient Facts for Breach of Contract and Implied Agreement

Defendants are in breached the terms of the Deed of Trust requiring notice of change in servicer as is stated above and incorporated herein.

Plaintiffs' Deed of Trust required the trustee to record the NOD.  Plaintiffs alleged:
> "The Deed of Trust for the Subject Property provides that if Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold.  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Trustee shall give public notice of sale." See Compl., p. 5, ¶ 20.

And  Plaintiffs' Deed of Trust provides that the Lender may appoint successor trustees. See Compl., Ex. A, p. 18, ¶ 24. This never happened in the instant matter.  In this case the NOD

was recorded by Cal-Western Reconveyance, LLC ("CWR") who could not have been the true trustee because CWR was not appointed by the true beneficiary.

No Lender has a legal claim to Plaintiff's DOT and could not have legally executed the April 2, 2014 Notice of Default ("NOD") due to the break in the chain of title at or around the original transfer to Wachovia in or around 2006.  This transfer violated paragraph 20 of the DOT because it resulted in a change in servicer and Plaintiff was not provided written notice of a change in servicer stating the name and address of the new Loan Servicer, the address to which payments should be made and additional information as required by the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA").   Therefore, the attempted transfer was deficient and failed to transfer the beneficial interest to Wachovia, which could not then have transferred any interest to Wells Fargo.  In causing the NOD to be recorded Defendants breached paragraph 22 of the DOT because no Defendant was the Lender or Trustee with the power of sale under the DOT due to the deficient assignments.

Defendants executed or caused agents and/or robo-signers to execute documents which were false and in violation of RESPA and paragraphs 20, 22 and 24 of the DOT attempting to validate a chain of title, which had been broken.

California Civil Code § 3301 limits a negotiable Instrument's enforcement.

None of the foreclosing parties were or are the present holders of Plaintiffs' Note such that they can enforce obligations on the note and demand payments, or foreclose on, or sell Plaintiffs' property under the DOT due to the failure to record an assignment or notice change in servicing rights.  Defendants cannot act pursuant to California Civil Code §3301, and establish their legal right in the property by providing to this court an unbroken chain of title that connects them to Plaintiffs' Note or DOT, and therefore the April 2, 2014 NOD is false and invalid under Section 3301 and Plaintiffs were never in default. The NOD is also in violation of California Civil Code § 2923.5 as will be set forth below which renders subsequent proceedings based on said notice false. *See Mabry v. Superior Court*, 185 Cal. App. 4th 208, 236-37 (2010).

Although Defendants clam Plaintiffs' have not performed under the terms of their agreement and therefore cannot bring suit for breach of contract, Plaintiffs argue that Defendants failed to perform a material condition, which constituted the complained of breach and excused Plaintiffs from performance.

Defendants also breached the Note and Deed of Trust by improperly modifying payment terms. Plaintiffs alleged:

> "Defendants Wells Fargo and CWR demanded payments from Plaintiffs without authorization to do so; caused Plaintiff to make payments in excess of what was owed that were never credited to Plaintiffs' account with the true Beneficiary under the Note and Deed of Trust. Plaintiffs' payments were also not properly credited because the amounts demanded were inaccurate and not in accordance with Plaintiffs' Note, wrongfully increasing Plaintiffs' obligation at the Maturity Date. Plaintiffs were sold an adjustable Note, which Note adjusted from time to time, but during modification review in October of 2014, Plaintiffs were told the Note was fixed according to Wells Fargo's correspondence dated October 3, 2014. A true copy of this correspondence is attached hereto as Exhibit B. See p. 11, LL 16 ("Product Before Modification: FixedRate".) Plaintiffs' loan adjusted payments in 2009, and just recently in October of 2014 to approximately $1800/month, as stated at LL 22 ("Principal and Interest Payment Before Modification: $1,827.09." Id. Yet, Defendants breached their promise to modify Plaintiffs' Note by an amount greater than 10% at a positive Net Present Value, because the proposed modified payment was $1,264.80 (>10% difference)(see p. 12, LL 35("Principal and Intrest Payment of the Proposed HAMP Modification: $1,264.80.")) Defendants failed to modify based on Defendants lack of ability "to reduce your principal and interest payment by 10% or more." See id., p. 1. Defendant's October 3, 2014 correspondence is self-contradictory and breaches their promise stated therein to modify for an amount greater than 10% of Plaintiffs' current obligation. And the changes in interest rate and character of Plaintiffs' loan from adjustable to fixed as of October 3, 2014 also breach the terms of Plaintiffs Note and DOT providing for increases to interest rate." See Compl., p. 7, ¶ 26.

"When a party's failure to perform a contractual obligation constitutes a material breach of the contract, the other party may be discharged from its duty to perform under the contract. Normally the question of whether a breach of an obligation is a material breach, so as to excuse performance by the other party, is a question of fact. Whether a partial breach of a contract is material depends on 'the importance or seriousness thereof and the probability of the injured party getting substantial performance.' 'A material breach of one aspect of a contract generally

constitutes a material breach of the whole contract.' " *Brown v. Grimes* (2011) 192 Cal.App.4th 265, 277–278 [120 Cal.Rptr.3d 893], internal citations omitted.

Plaintiffs were entitled to reinstate their loan according to the DOT and California Civil Code § 2924c(a)(1)(A-C) which grants borrower a right to discontinue the foreclosure process by reinstatement in accordance with the Civil Code, but are prevented from doing so due to Defendants obfuscation of the terms of the agreement.

And any demand for fees would violate Regulation Z, 12 C.F.R. § 1026.4(b)(2) at this time because these were not properly disclosed at the time of the modification of Plaintiffs' loan from adjustable to fixed rate.

**IV. The Homeowner's Bill of Rights Act Contains Basically the Same Provision as the Preceding Cal. Civ. Code § 2923.5 and Plaintiffs Stated a Violation of Dual-Tracking**

If the Court will grant leave to amend, Plaintiffs could allege violation of Cal. Civ. Code § 2923.55(c), which contains essentially the same language as Plaintiffs' third cause of action.

A court may, in the furtherance of justice, allow a party to amend any pleading on any terms as may be proper. Code Civ. Proc. §§ 473(a) and 576. "This statutory provision giving the courts the power to permit amendments in furtherance of justice has received a very liberal interpretation by the courts of this state." *Klopstock v. Superior Ct.* (1941) 17 Cal.2d 13, 19; *see also Nestle v. City of Santa Monica* (1972) 6 Cal.3d 920, 939. "that the trial courts are to liberally permit such amendments, at any stage of the proceeding, has been established policy of this state since 1901." *Hirsa v. Superior Ct.* (1981) 118 Cal.App.3d 486, 488-89 (emphasis in original). Even on the eve or trial, for example, the court of appeal determined that it was error to deny the amendment of a cross-complaint to add an additional theory of recovery where the delay in seeking the amendment was attributable to the opposing party's failure to comply with discovery requests. *Sachs v. City of Oceanside* (1984) 151 Cal.App.3d 315, 319.

The policy favoring leave to amend is so strong that it is an abuse of discretion to deny an amendment unless the adverse party can show meaningful prejudice, such as the running of the statute of limitations, trial delay, the loss of critical evidence, or added preparation costs.

1    *Atkinson v. Elk Corp.* (2003) 109 Cal.App.4th 739, 761; *Solit v. Taokai Bank, Ltd.* (1999) 68

2    Cal.App.4th 1435, 1448. Absent a showing of such prejudice, delay alone is not grounds for

3    denial of a motion to amend. *See Kittredge Sports Co. v. Superior Ct.* (1989) 213 Cal.App.3d

4    1045, 1048; *Higgins v. Del Faro* (1981) 123 Cal.App.3d 558, 563-65.

5        The court's discretion will usually be exercised liberally to permit amendment of the

6    pleadings. *See Mabie v. Hyatt* (1998) 61 Cal.App.4th 581, 596. The policy favoring amendment

7    is so strong that it is a rare case in which denial of leave to amend can be justified. *Douglas v.*

8    *Superior Court* (1989) 215 Cal.App.3d 155, 158. "Leave to amend should only be denied where

9    the facts are not in dispute, and the nature of the plaintiff's claim is clear, but under substantive

10    law, no liability exists and no amendment would change the result.*" Edwards v. Superior Court*

11    (2001) 93 Cal.App.4th 172, 180. Plaintiff's right to plead additional causes of action is not

12    limited where the Court order allows such amendments. *People ex. Rel. Dep't Pub. Works v.*

13    *Clausen*, 93 Cal.App.4th 172, 180. The Court of Appeal held that: "[t]he plaintiff may not

14    amend the complaint to add a new cause of action without having obtained permission to do so,

15    unless the new cause of action is within the scope of the order granting leave to amend." *Id.* at p.

16    785.

17        Defendants are unable to comply with California Civil Code § 2923.55 which prohibits a

18    mortgage servicer, mortgages, trustee, beneficiary, or authorized agent to record a notice of

19    default pursuant to Section 2924 until the mortgage servicer sends in writing to the borrower a

20    statement that the borrower may request of the servicer, "[a] copy of any assignment, if

21    applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the

22    servicer to foreclose." Defendants would not be able to comply because there is no document

23    that would evidence such a right of the servicer due to lack of any assignment which failed to

24    legally perfect the transfer to Wells Fargo in violation of the terms of the DOT, RESPA, and

25    TILA.

26        And Plaintiffs clearly stated the dual tracking violation (even though Defendant stated

    they did not) by alleging: "Defendants are prohibited from recording an NOD or NOTS or

conducting a trustee's sale due to the prohibition against dual tracking provisions imposed by HBOR which were invoked by Plaintiffs' submission of their completed first lien loan modification application on June 30, 2014.  [54.Defendants thereafter recorded the July 3, 2014 NOTS on or around July 7, 2014 without providing a response to Plaintiffs to their application in violation of the Cal. Civ. Code § 2923.6.  Plaintiffs did not receive a response to their application until August 14, 2014. A true copy of Defendants' response is attached [to the Complaint] as Exhibit C."  See Compl., p. 12, ¶ 53-54.  Thus, Plaintiffs sufficiently stated a claim for violation of Cal. Civ. Code § 2923.6 as well.

### V.  Plaintiffs Stated a Claim for Violation of the FDCPA

The NOD also fails to comply with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, ("FDCPA") and should not be enforceable.  Defendants are debt collectors within the meaning of the FDCPA.  See 15 U.S.C. § 1692a(6), *Birster v. American Home Mortgage Servicing, Inc.,* No. 11-13574-G, U.S. App. (11th Cir.) (*unpublished*).  Defendants violated the FDCPA with actions pertaining to enforcement of the Note and Plaintiffs' DOT with challenged debt collection conduct including Section 2923.55 compliance which failed to include the FDCPA Mini Miranda Warning and FDCPA 30-day validation notice requirements.  Nowhere within the Defendants correspondence or verbal communications regarding Section 2923.55 compliance, within the NOD, or otherwise, did Defendants state that within 5 days of any initial communication with Plaintiffs, Defendants must notify Plaintiffs in writing, of Plaintiffs' debt validation rights.  And nowhere within the Defendants correspondence or verbal communications regarding Section 2923.5 compliance, within the NOD, or otherwise, did Defendants inform Plaintiffs of her aforementioned dispute rights under the FDCPA.  See Defendant's Request for Judicial Notice, Ex. G.

### VI. Plaintiff Properly Alleged Claims of Slander of Title and Wrongful Foreclosure

Plaintiffs facing non-judicial foreclosure can assert "a specific factual basis for alleging that the foreclosure was not initiated by the correct party."  *Gomes v Countrywide Home Loans*, 192 Cal. App. 4th 1149, 1156 (2011).  That is, a plaintiff may bring a suit alleging that the entity

that initiated the foreclosure lacked the power to foreclose and therefore had no legal authority to foreclose upon the property. Several courts have allowed plaintiffs' claims to proceed where the plaintiff asserted that the entity which initiated the foreclosure lacked the right to foreclose. See *Tamburri v. Suntrust Mortgage, Inc*., 2011 WL 6294472 at *10-11 (N.D. Cal. 2011) (citing *Sacchi v. Mortgage Electronic Registration Systems, Inc*., 2011 WL 2533029, *8 (C.D. Cal. 2011)).

Because there is no recorded Assignment of Deed of Trust CWR had no authority to act on behalf of the true beneficiary of Plaintiffs' Deed of Trust. The Deed of Trust is unenforceable, and the foreclosure documents including the NOD and Notice of Trustee's Sale, cloud Plaintiff's title because CWR had no authority to record an NOD as of April 2, 2014.

Plaintiff's Complaint includes allegations that the true beneficial interest holder was other than the foreclosing party, Wells Fargo. Plaintiffs' Complaint alleges that the beneficial interest holder was not Wells Fargo because World Savings broke the chain of title. The Deed of Trust itself is therefore at least the minimum required false and disparaging publication required to state a cause of action for slander of title under *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 857-858 due to its lack of enforceability. By alleging the non-existence of a true beneficial interest holder, Plaintiffs alleged they were not in default. And they also alleged that no entity had a right to foreclose under *Seeley v. Seymour*, 190 Cal.App.3d at p. 857-858.

The NOD and NOTS are false as stated above due to the violations of RESPA, TILA, paragraphs 20, 22, and 24 of the DOT, robo-signing and fraudulents acts of CWR and Wells Fargo and could not validate an illegal foreclosure, and moreover disqualify Defendants from the qualified privilege exemption from slander of title claims because these documents were recorded with reckless disregard of Plaintiffs' rights to the Subject Property, and with malice.

While the qualified common interest privilege of California Civil Code section 47(c)(1) applies to the documents required by the non-judicial foreclosure scheme, this privilege is not absolute. Instead, the privilege only protects communications made without malice. In this context, "malice is defined as actual malice, meaning that the publication was motivated by

hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon v. Markowitz* (2008) 168 Cal. App. 4th 316, 336  (citations omitted, emphasis in original).

Here, Defendants acted with malice by recording the NOD and Notice of Trustee's Sale while aware that these documents were not being recorded by the true trustee for the true beneficial interest holder of Plaintiffs' Deed of Trust and by maintaining the Deed of Trust on record, knowing that there was no entity in existence with the power of sale.

Acting with "[m]ere inadvertence, or careless blundering" is insufficient to prove malice, but, here Defendants acted with malice by recording these documents that had no basis in facts pertaining to the identity of the true holder of the beneficial interest in reckless and callous disregard of the rights of Plaintiffs and their interest in the Subject Property.

The recording of these documents cast doubt on Plaintiffs' title.  Plaintiffs have suffered a direct financial loss as a result of the recordation of these false documents because they were forced to seek legal counsel to protect their interest in the Subject Property and from having their home wrongfully sold.

Plaintiffs' Complaint states that Defendants were not authorized by the true beneficiary to foreclose because they were not entitled to payment under the Deed of Trust or the recorded beneficiary in the public chain of title prior to the date of the foreclosure sale.  Plaintiffs' allegations provide the basis for Plaintiffs' causes of action, and the prejudice and pecuniary harm Plaintiffs' suffered as a result of Wells Fargo's fraudulent billings.

Further, Plaintiffs alleged the detrimental impact to the vendibility of Plaintiffs' property stating pecuniary damages sustained by Plaintiffs as a result of the wrongfully recorded foreclosure documents and the fraudulent billings.  Plaintiffs alleged that the false recorded documents caused economic damages to Plaintiffs because they disclose a claim of right, title or interest in the subject property which gives rise to a need for policy endorsements for title insurance, settlement of a claim shown on a title report, and/or a significant dissuasive factor for

any prospective purchaser inspecting the property for sale, and/or its disclosures, any and all of which factors negatively affected and continue to affect the purchase price of the Subject Property, and vendibility, of the Subject Property in an amount to be proven at trial.

The Court of Appeal has held that at least in cases such as this one where title was disparaged in a recorded instrument, attorney fees and costs necessary to clear title or remove the doubt placed on it by defendant's falsehoods are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999.

The Court also noted that courts in other jurisdictions have directly confronted this issue and have concluded that attorney fees incurred in removing the effects of slander of title are recoverable as special damages even in the absence of proof of an impairment of vendibility.

In the instant matter, Plaintiffs were prejudiced by Defendants' assertion of the right to foreclose and maintaining the false Deed of Trust recorded against Plaintiffs' property because the false Deed of Trust is the foundation for Defendants' attempts to complete a wrongful foreclosure of Plaintiffs' property and the foreclosure documents could simply be re-recorded should Plaintiffs' lawsuit be dismissed.  Without the improper and false Deed of Trust, these Defendants' would not have initiated this foreclosure.  As the Court stated in *Tamburri*, 2011 WL 6294472 at *14, the fact that the wrong party initiated a foreclosure demonstrates prejudice to the Plaintiffs.

**VII.    Plaintiffs Have Standing Under Federal Law And Have Stated Sufficient Facts Under TILA**

Plaintiffs have sufficiently pled their claim under the Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601, et.seq..

Defendants violated TILA by failing to provide Plaintiffs with accurate material disclosures required under TILA and not taking into account the intent of the legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and

comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

Under TILA, any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices. *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703 (11th Cir., 1999)(consumers are not time barred from suing lender for TILA violations when the violations are concealed by misrepresentation that is not "apparent on the face" of the disclosure statement.)

Defendants also violated TILA by the unrecorded attempted transfers and violated paragraph 20 of the DOT by violating the Truth-In-Lending Act ("TILA"), 15 U.S.C § 1641(g), titled "Liability of Assignee," which requires that when an entity purchases or is assigned the beneficial interest in a loan on a property, it must notify the borrower in writing within 30 days of when the loan is transferred.  15 U.S.C. § 1641(g).  This never happened therefore, the Purchase and Assumption Agreements failed to transfer the beneficial interest to Wells Fargo.  In causing the NOD to be recorded Defendants breached paragraph 22 of the DOT because no Defendant was the Lender or Trustee with the power of sale under the DOT.

## VIII.   Plaintiffs Stated a Cause of Action for Violations of California Business and Professions Code Section 17200

California Business and Professions Code Section 17200 prohibits unlawful, unfair, or fraudulent business practices.  Section 17200 is a derivative cause of action and Plaintiffs' ability to pursue this cause of action depends on the success or failure of their substantive causes of action.

Basing the foreclosure process of Plaintiffs' home an illegal foreclosure sale is wrongful and constitutes unlawful and unfair business practices.  See Cal. Civ. Code § 2924 et seq.  Thus, Defendants engaged in business practices which violate Section 17200.

And Plaintiffs have alleged pecuniary harm as a result of Defendants' practices in that Plaintiffs alleged the aforementioned violations placed their interest in the Subject Property in jeopardy by instituting foreclosure proceedings, and also by causing monetary damages in an amount to be proved at trial.

Based on the violations of Civil Code Section 2924, false recorded documents and mortgage statements, breaches of the PSA and provisions of Plaintiff's DOT, and violations of state and federal laws, Defendants violated Business and Professions Code Section 17200.

**IX.    Conclusion**

Plaintiffs respectfully request that the Court overrule WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT and further respectfully requests that if the Court sustains WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT, then the Court grant Plaintiffs leave to amend the Complaint.

DATED: February 9, 2015            Respectfully submitted,


 _s/ Megan Ann Dailey___
Megan Ann  Dailey
Attorney for Plaintiff